**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHARLES JOSEPH HAYDOSTIAN, | **Case No. 1:15-CV-00058-EPG** |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security | |
| Defendant. | |

## I.    INTRODUCTION

Plaintiff Charles Joseph Haydostian ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to the Honorable Erica P. Grosjean, United States Magistrate Judge.[1] Upon a review of the administrative record, the Court finds the ALJ's decision is proper and is supported by substantial evidence in the record as a whole. Accordingly, this Court affirms the agency's determination to deny benefits and denies Plaintiff's appeal.

 ///

 ///

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Doc. 6 and 7).

## II.     BACKGROUND AND PRIOR PROCEEDINGS

Plaintiff filed an application for DIB in September 2011, alleging a disability onset date of December 1, 2009. [2] AR 180. His application was denied initially in January 2012 and on reconsideration in July 2012. AR 122, 128. A hearing was conducted before Administrative Law Judge John Cusker ("ALJ") on January 9, 2013. AR 32-62. On May 31, 2013, the ALJ issued a decision finding that Plaintiff was not disabled. AR 16-30. Plaintiff filed an appeal of the decision with the Appeals Council. AR 5-7. The Appeals Council denied his appeal, rendering the order the final decision of the Commissioner. AR 1-3.

Plaintiff now challenges that decision, arguing that the ALJ erred by: (1) relying on nonexamining physicians over treating and examining physicians without an adequate basis, (2) finding the Plaintiff not credible, and (3) not including all of Plaintiff's impairments in the Residual Functional Capacity ("RFC") determination. [3] (Doc. 15, pgs. 6-8). Plaintiff argues that the Court should reverse and award benefits to Plaintiff. In the alternative, Plaintiff contends the case should be remanded for further administrative proceedings. In opposition, Defendant argues that the ALJ: (1) properly found Plaintiff not entirely credible, (2) properly evaluated the medical opinion evidence, and (3) properly did not account for unsupported limitations in the RFC assessment. (Doc. 26, pgs. 5-12).

### A.  Plaintiff's Testimony

Plaintiff testified that he attended school through the tenth grade, and took a high school proficiency examination. AR 37. After receiving six months vocational training as a welder, he went on to work as a structural steel fitter for 15 years. AR 37. After December 2009, the alleged onset date, Plaintiff worked part time doing other odd jobs at work sites for his employer because his pain prevented him from doing his welder work. AR 38-39.

Plaintiff testified that he cannot stand for more than short periods because his feet swell and become numb. AR 41-42. It is also difficult for him to grasp and lift things with his left hand and

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.
[3] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. § 416.945. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

arm. AR 42. He has difficulty bending and can only lift 15 pounds. AR 43, 45. He cannot reach overhead or outward repeatedly with his left arm. AR 46. The fingers of his left hand "curl up" into a fist after 20 minutes of use. AR 48. He experiences pain on the left side of his head, face, and neck. AR 44. In response to pain and dizziness he spends seven to eight hours lying down during the day. AR 43-44. Plaintiff testified he cannot afford to see a doctor. AR 42, 49. He has sought no treatment and taken no medication, including over-the-counter medication, since January 2012. AR 40, 50-51. Plaintiff received unemployment insurance until December 2012. AR 50.

**B. Medical Record**

The entire medical record was reviewed by the Court. However, only evidence that relates to the issues raised in this appeal is summarized below.

*i.    Medical Treatment History*

On October 2009, just before the alleged onset date of December 2009, CT scans showed Plaintiff had acute and chronic sinusitis. AR 261. Starting in September 2009, Plaintiff received primary care treatment from Patrick Brauner, M.D. AR 271. Dr. Brauner prescribed Plaintiff narcotic medications for complaints of facial pain. AR 270. Dr. Brauner referred Plaintiff for sleep studies in May 2010 but he refused the services. AR 267. Dr. Brauner also referred Plaintiff for a neurological examination regarding his complaints of facial pain. AR 264. On August 4, 2010, Plaintiff requested that Dr. Brauner write a note to put him on temporary disability, but Dr. Brauner refused until the results of the neurological examination were back. Plaintiff became angry, and Dr. Brauner stopped treating Plaintiff. AR 264, 284.

On August 24, 2010, Madhav Suri, M.D., performed a neurological examination (on referral from Dr. Brauner) to evaluate Plaintiff for complaints of left facial pain and left arm pain. AR 285-88. He diagnosed Plaintiff with "left facial pain, atypical, suggestive of left trigeminal neuralgia atypical facial pain." AR 284. On September 3, 2010, nerve conduction studies showed abnormal results of median nerve entrapment at the wrists, left greater than the right. AR 289-90.

In October 2010, Ernest Yamamoto, M.D., who had been treating Plaintiff for allegations of facial pain, reported Plaintiff was non-compliant with medications and Dr. Yamamoto said he

would no longer serve as Plaintiff's physician. AR 343-45. In November 2010, Dr. Suri declined to prescribe Plaintiff narcotics Plaintiff had requested based on Dr. Brauner's recommendation that other medications should be considered. AR 284. From November 2010 to July 2011, Plaintiff saw Michael Castillo, M.D., periodically for complaints of facial pain and he received medication refills. AR 328-29, 331, 334, 341-42.

Plaintiff's last medical treatment was in January 2012, when he went to the hospital with facial and left arm pain and requested medication refills. AR 362. Physical examination findings at that time were unremarkable. AR 363-64.

### ii.   Consultative Examiner, Dr. Portnoff, Ph.D.

On November 18, 2011, Lance A. Portnoff, Ph.D., performed a consultative psychological examination. AR 348-52. Plaintiff reported that he felt depressed about his health and did not like to be around people. AR 349. Dr. Portnoff diagnosed a depressive disorder, NOS, with anxious features, and methamphetamine abuse in full sustained remission. AR 351. He found that Plaintiff demonstrated adequate concentration, persistence, and pace with appropriate thought content and intact memory. AR 349-50. Dr. Portnoff opined that Plaintiff was capable of performing simple and repetitive tasks. AR 351. He further opined Plaintiff had moderate limitations in his ability to accept instructions from supervisors, interact with the public, maintain regular attendance, complete a normal workday or workweek, and deal with the stress encountered in a competitive work environment. AR 351-52.

### iii.   Consultative Examiner, Dr. Wagner, M.D.

On December 14, 2011, Roger Wagner, M.D., performed a consultative internal medicine examination. AR 355-59.  Plaintiff only indicated problems with facial and arm pain, and the examiner observed that Plaintiff previously had sinus surgery. AR 355, 357.  Dr. Wagner diagnosed left ulnar side fourth and fifth finger pain and numbness, and left facial pain possibly consistent with trigeminal neuralgia, AR 359.  Dr. Wagner assessed a normal range of motion with full motor strength in the bilateral extremities, including the left elbow, AR 356-57. The doctor recorded that he was able to touch Plaintiff's face without any difficulty, AR 359. Dr. Wagner opined Plaintiff had no exertional or postural limitations except that he should avoid

4

climbing or balancing on ladders or scaffolds given his reported history of vertigo. AR 359. He further opined Plaintiff had no manipulative limitations involving his right (dominant) hand, but he was limited to frequent manipulative activities with the left hand.

### iv.      State Agency Medical Evaluators

On December 15, 2011, G. Ikawa, M.D., a State agency physician, reviewed the evidence and opined Plaintiff could sustain simple repetitive tasks with limited public contact. AR 72-74. On June 27, 2012, Anna M. Franco, Psy.D., reviewed the evidence and affirmed Dr. Ikawa's opinion regarding Plaintiff's mental abilities. AR 105-107.

On January 11, 2012, Martha A. Goodrich, M.D., a State agency physician, reviewed the evidence of record and opined Plaintiff had no exertional limitations, but he was limited to occasionally crawling and climbing ladders, ropes and scaffolds. AR 70-72.  Dr. Goodrich further opined Plaintiff was limited to gross and fine manipulation with the left upper extremity and needed to avoid exposure to vibration, and in particular, he was limited to occasionally using vibratory hand tools with either upper extremity. AR 71-72.  On June 20, 2012, State agency physician L. Bobba, M.D., reviewed the evidence and endorsed Dr. Goodrich's opinion. AR 103-105.

## III.    THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established

a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 404.1502(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. § 404.1502(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. § 404.1527.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments,[4] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the RFC to perform his or her past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 404.1520(a)-(f).

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 19. In particular, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act though September 30, 2015. AR 21. Further, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 1, 2009, the alleged onset date. AR 21. The ALJ identified "history of left ulnar side fourth and fifth finger pain and numbness, status post-surgery; history of bilateral carpal tunnel syndrome, with left greater than the right; trigeminal neuralgia; depressive disorder, not otherwise specified (NOS) with anxious features; and a history of methamphetamine use, in sustained full remission" as severe impairments. AR 21. The ALJ also determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 22.

Based on a review of the entire record, the ALJ determined that:

> [Plaintiff] has the [RFC] to perform work at all exertional levels, but is limited to occasionally crawling and climbing ladders, ropes, or scaffolds. He is also limited to frequent gross and fine

---

[4] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 416.920(c).

manipulation with the left upper extremity, and must avoid concentrated exposure to vibration; specifically he is limited to occasionally using vibratory hand tools with either upper extremity. In addition, he is capable of sustaining simple repetitive tasks with limited public contact.

AR 23.

Based on this RFC, the ALJ found that Plaintiff could not perform his past relevant work. AR 26. However, the ALJ found that because there were a significant number of other jobs in the national economy which Plaintiff could perform, he was not disabled. AR 26.

## IV.   STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence, and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

## V.   DISCUSSION
### A. The ALJ's Assessment of the Medical Opinions is Supported by Substantial Evidence.

Plaintiff argues that the ALJ improperly considered the medical evidence regarding Plaintiff's impairments. Specifically, Plaintiff is challenging the ALJ's reliance on nonexamining physicians over examining and treating physicians. Plaintiff argues that the ALJ improperly relied on the opinion of non-examining sources and did not address the opinions of Plaintiff's treating physicians. (Doc. 15, pg. 7).

Defendant contends that the ALJ's assessment of the medical analysis is supported by

substantial evidence and that the ALJ properly provided reasons for the weight accorded to the medical opinions. Specifically, Defendant argues that the ALJ did not discuss treating physician opinions because there were no treating physician opinions and in relying on the nonexamining opinions, the ALJ adopted the most restrictive physical opinion findings in the record and adequately accounted for Plaintiff's impairments. (Doc. 16, pgs. 8-11).

### 1. *Legal Standards for Medical Opinions*

The weight given to medical opinions depends in part on whether they are offered by treating, examining, or non-examining (reviewing) professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id*.; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. *Lester*, 81 F.3d at 830. While a treating professional's opinion is generally accorded superior weight, if it is contradicted by an examining professional's opinion (when supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995), citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152 (9th Cir. 2001), except that the ALJ need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751.

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the

uncontradicted opinion of an examining physician. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Lester*, 81 F.3d at 830.

The opinion of a non-examining physician may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Such independent reasons may include laboratory test results or contrary reports from examining physicians, and Plaintiff's testimony when it conflicts with the treating physician's opinion. *Lester,* 81 F.3d at 831*,* citing *Magallanes*, 881 F.2d at 751–55.

### 2. The ALJ's Findings

When evaluating Plaintiff's mental impairments and the doctor's opinion evidence, the ALJ states as follows:

> These findings are based upon and consistent with the opinion of State agency consultant, Anna M. Franco, Psy.D., who opined the claimant had the exact same limitations in a Psychiatric Review Technique Form dated June 27, 2012. I accord great weight to the opinion of Dr. Franco because it is supported by and consistent with the medical evidence, including the consultative psychological examination report, which showed [Plaintiff] demonstrated adequate concentration, persistence, and pace with appropriate thought content and in an intact memory.

AR 22 (citations omitted).

> G. Ikawa, M.D., a State agency consultant, reviewed the evidence, and opined the claimant was able to sustain simple repetitive tasks with limited public contact….I accord the most weight to [Dr. Franco and Dr. Ikawa's] opinions because they are supported by and consistent with the record, including the findings and opinion of [consultative psychological examiner] Dr. Portnoff. Further, considering the lack of any mental health treatment, these opinions more than adequately accounts [sic] for his mental impairments.

AR 25 (citations omitted).

When evaluating Plaintiff's physical impairments and the doctor's opinion evidence, the ALJ states as follows:

> No treating physician has provided an opinion regarding

[Plaintiff's] residual functional capacity, but Dr. Wagner, who examined [Plaintiff], opined [Plaintiff] had no exertional or postural limitations except for his ability to climb or balance on ladders or scaffolds. He further opined [Plaintiff] had no manipulative limitations involving his right [dominant] hand, but was limited to frequent manipulative activities with the left. I accord weight to this opinion because it is generally consistent with the record, including the unremarkable examination findings, and lack of consistent treatment. The opinion is also consistent with abnormal nerve conduction studies and left ulnar side pain and numbness.

…Martha A. Goodrich, M.D., a State agency medical consultant, reviewed the evidence of record, and opined [Plaintiff] had no exertional limitations, but was limited to occasionally crawling and climbing ladders, ropes, and scaffolds. Dr. Goodrich further opined [Plaintiff] was limited to frequent gross and fine manipulation with the left upper extremity and needed to avoid exposure to vibration, in particular, he was limited to occasionally using vibratory hand tools with either upper extremity. L. Bobba, M.D., another State agency medical consultant, reviewed the evidence and endorsed this opinion….I accord the most weight to their opinions because the evidence, including the report and opinion of Dr. Wagner support them. These opinions are also consistent [with] other medical findings, and with the lack of continuing treatment.

AR 24 (citations omitted).

### 3.  *Analysis*

As a preliminary matter, Plaintiff did not adequately brief the issue of whether the ALJ properly considered the treating physicians' opinions.  Plaintiff's counsel makes a general argument consisting of three paragraphs with general references to the medical record in the opening brief (Doc. 15, pg. 7), but only develops the argument by citing to specific treating physician records in the reply, after the Commissioner filed its opposition.  This is improper as the Commissioner has not been given an opportunity to address Plaintiff's arguments. *See*, *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (internal quotations and citations omitted). ("Our circuit has repeatedly admonished that we cannot manufacture arguments for an appellant and therefore we will not consider any claims that were not actually argued in appellant's opening brief. Rather, we review only issues which are argued specifically and distinctly in a party's opening brief."); *See also Provenz v. Miller*, 102 F. 3d 1478, 1483 (9th Cir. 1996) (raising new issues and submission of new facts in reply brief is improper if other

party is not allowed to respond) cert. denied, 522 U.S. 808 (1997).

Notwithstanding the lack of argument on this issue until the reply brief, the Court is not persuaded by Plaintiff's arguments. The ALJ is not required to comment on every detail in every report.  As noted in *Vincent v. Heckler*, 739 F.2d 1393, 1394-1395 (9th Cir. 1984), "[t]he Secretary . . . need not discuss all evidence presented to her. Rather, she must explain why 'significant probative evidence has been rejected.'" An ALJ may reject a medical opinion that includes "no specific assessment of [the claimant's] functional capacity" during the relevant time period. *Johnson v. Shalala,* 60 F.3d 1428, 1432 (9th Cir.1995). Likewise, an ALJ can disregard a medical report that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 601 (9th Cir.1999); *see also Meanel,* 172 F.3d at 1114 (ALJ properly rejected a medical opinion that failed to explain the extent or significance of a condition).

Here, the crux of Plaintiff's argument is that the ALJ improperly evaluated the medical record because he failed to consider the treating physicians' opinions. However, Plaintiff does not identify, nor has the Court found, any treating physician opinion. "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). The only medical evidence in the record from Plaintiff's treating physicians are treatment records. While some of these records indicate that Plaintiff had chronic pain, median nerve entrapment at the wrist, arm pain, and left facial pain, *e.g.,* AR 270, 287, 376, they offer no opinion concerning Plaintiff's actual ability to function.[5] AR 24, 25. *See Matthews v. Shalala,* 10 F.3d 678, 680 (9th Cir.1993) ("The mere existence of an impairment is insufficient proof of a disability."). Moreover, no treating physician has opined Plaintiff is totally

---

[5] The Court notes Plaintiff's claim that the "record is replete with [Plaintiff's] treating physicians' diagnosis of chronic facial pain and left arm pain." (Doc. 17, pg. 2) However, while a review of the exhaustive list of citations provided by Plaintiff substantiated this in part, it also provides a string of Plaintiff's subjective complaints to treating physicians accompanied by statements tending to support the ALJ's credibility determination, such as: "treatable pain in upper extremities via wrist splint" (AR 283); sinus surgery found "no local cause for his facial pain" (AR 285); "patient presents with left facial pain….A CT…was unremarkable for a neurological cause for pain" (AR 287); and Plaintiff declines treatment.  AR 288.

1    disabled from all employment. *See Matthews,* 10 F.3d at 680 (in upholding the Administration's

2    decision, the Court emphasized: "None of the doctors who examined [claimant] expressed the

3    opinion that he was totally disabled.").

4         Nevertheless, it is apparent from the ALJ's decision that he considered Plaintiff's

5    treatment records when rendering his decision. For example, when referencing Plaintiff's claims

6    of pain in his left upper extremities and face the ALJ stated "[t]reatment reports reveal abnormal

7    nerve conduction studies….(exhibits [AR 283; 297-298])….[Plaintiff] has also alleged suffering

8    from left facial pain (see Exhibits [AR 283, 285; 355])." AR 23-24. These references are

9    primarily to the record provided by Plaintiff's own treating physician Dr. Suri. AR 283, 297-298,

10   285. The ALJ, in addressing Plaintiff's credibility, states that there is "not much evidence of

11   treatment" for these impairments. AR 24. He then cites directly to Plaintiff's treating physician

12   records including those from Advanced Medical Imaging, AR 261-262; Dr. Brauner, AR 264-

13   281; Dr. Suri, AR 283-290; various labs, progress and treatment notes, AR 292-346; and

14   Plaintiff's ER visit in January 2012, AR 362-389.

15        Further, when giving weight to the nonexamining and examining physicians, the ALJ

16   noted their opinions are consistent with the record. For example, when giving weight to Dr.

17   Wagner, the ALJ noted his opinion "is generally consistent with the record, including the

18   unremarkable examination findings (see Exhibit [AR 375-376]), and lack of consistent treatment.

19   AR 24.  The opinion is also consistent with abnormal nerve conduction studies (see Exhibits [AR

20   283; 297-298]) and left ulnar side pain and numbness (see Exhibit [AR 359])." AR 24. Here

21   again, the ALJ specifically refers to records of Plaintiff's treating physicians to support his

22   conclusion. AR 375-376, 283, 297-298.

23        Moreover, it is apparent that the examining and nonexamining physicians also relied on

24   Plaintiff's treatment record when formulating their opinions. For example, Dr. Wagner

25   acknowledges Plaintiff's facial and left arm pain. AR 355-356. He then references Plaintiff's

26   history of sinus surgery and recent nerve conduction studies and electromyograms which are

27   contained in the treatment records of Dr. Suri. AR 359, 283. Dr. Goodrich, when explaining how

28   and why the evidence supports her conclusion, refers to Plaintiff's history of ulnar nerve

12

transpositions and ongoing symptoms in the ulnar nerve distribution. AR 71. This is also consistent with Dr. Suri's reports. AR 287.

Finally, Plaintiff argues that the ALJ erred in relying on the opinions of nonexamining physician over examining physicians when evaluating his physical impairments. The Court again advises Plaintiff that he did not address this issue thoroughly in his opening brief.[6] Notwithstanding, the physical impairment limitations identified by the nonexaming physicians were more restrictive that those identified by the examining physicians, and thus most favorable to Plaintiff. For example, Dr. Goodrich opined Plaintiff had the same limitations as did Dr. Wagner with the additional postural limitation of occasionally climbing ropes, limited manipulative use of Plaintiff's left hand, and environmental limitation of occasional use of vibratory hand tools with either upper extremity. AR 71-72. The ALJ incorporated these limitations into the RFC. AR 23.

Given the above, the ALJ properly discussed Plaintiff's treatment records when determining the impact Plaintiff's impairments had on his RFC and when according weight to the opinions of examining and nonexamining physicians. AR 23.  Therefore, the ALJ's interpretation of the medical evidence is supported by substantial evidence.

**B. The ALJ's Credibility Determination was Proper.**

Plaintiff argues that the ALJ erred by improperly considering lack of treatment as a basis for an adverse credibility finding. (Doc. 15.) The Commissioner asserts that the ALJ provided other valid bases for finding Plaintiff not credible and his credibility determination was proper. (Doc. 16.) A review of the record reveals that contrary to Plaintiff's assertions, the ALJ provided clear and specific reasons, which are supported by the record as a whole for his credibility determination.

### 1. Legal Standards for Credibility Determination

A two-step analysis applies at the administrative level when considering a claimant's credibility. *Treichler v. Comm. of Soc. Sec*., 775 F. 3d 1090, 1098 (9th Cir. 2014). First, the

---

[6] We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review.  *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) (per curiam).

claimant must produce objective medical evidence of his or her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her symptoms only if he or she makes specific findings and provides clear and convincing reasons for doing so. *Id.; Brown-Hunter v. Colvin,* 806 F.3d 487, 493 (9th Cir. 2015); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight."). Factors an ALJ may consider include: 1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; 2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and 3) the applicant's daily activities. *Smolen*, 80 F.3d at 1282. Work records, physician and third party testimony about the nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

In this case, following consideration of the evidence and an in-person hearing, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but that Plaintiff's statements concerning "the intensity, persistence and limiting effects of these symptoms are not entirely credible." AR 25. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-82.

As noted above, because the ALJ did not find that Plaintiff was malingering, he was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Brown – Hunter*, 806 F. 3d at 493; *Smolen*, 80 F.3d at 1283-84; *Lester*, 81 F.3d at 834. When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his or her symptoms solely because they are unsupported by medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, general findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Brown-Hunter*, 806 F. 3d at 493.

///

1

### 2. *The ALJ's Findings*

The ALJ highlighted the following examples of inconsistent and unsupported allegations that undermine Plaintiff's credibility;

> [Plaintiff] testified to only being able to lift 15 pounds, but the record evidence, which shows a normal range of motion with full motor strength in the bilateral extremities, does not support this limitation. [Plaintiff] also reported his ability to bend was "affected" but that is not consistent with the record, which shows he was very easily able to bend over at the waist and take off shoes without any difficulties….

> Further detracting from the credibility of his allegations is the lack of consistent treatment. For instance,… he has not received any treatment, including prescription or over the counter medication, since January 2012. In addition, [Plaintiff] testified to receiving unemployment benefits until December 2012 and in order to receive said benefits, he certified he was ready and able to work up until his benefits ended, which is in direct conflict with the allegation he has been unable to work since December 1, 2009. Furthermore, the record shows he worked part-time subsequent to the alleged onset date as well.

AR 26 (citations and quotations omitted).

### 3. *Analysis*

Plaintiff argues that because he was unable to afford treatment, the ALJ improperly relied on his lack of consistent treatment as a basis for discrediting his testimony. However, Plaintiff's treatment history was not the only basis the ALJ relied on to support his decision. Instead, the ALJ relied on (1) objective evidence, (2) inconsistencies in Plaintiff's statements, (3) Plaintiff's prior work history, in addition to the lack of consistent treatment. AR 26. A review of the record reveals that the ALJ's credibility determination is supported by substantial evidence.

First, the ALJ correctly found that the objective medical evidence failed to support and was not consistent with Plaintiff's allegations. For example, in December 2011, during a consultative examination with Dr. Wagner, Plaintiff exhibited normal range of motion and full motor strength in the bilateral extremities. AR 357-358. This is in direct conflict with Plaintiff's allegations that he is unable to lift more than 15 pounds with his left hand. AR 43. Additionally, Dr. Wagner found that Plaintiff had normal grip strength bilaterally, which also is in direct

conflict with Plaintiff's allegations of difficulty gripping items with his left hand. AR 42.
Plaintiff's testimony that he has to slowly bend over and get back up is contradicted by Dr.
Wagner's observation that Plaintiff is "very easily able to bend over at the waist and take off
shoes without any difficulty." AR 45, 356-357. Further, Plaintiff's reports of continued left arm
and facial pain are unsupported by a comprehensive examination performed in January 2012,
which is unremarkable except for Plaintiff's subjective complaints and an old left elbow
deformity. AR 375-376. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (The ALJ may
consider lack of objective evidence in their credibility analysis); *Johnson*, 60 F.3d at 1434
(inconsistencies between the record and medical evidence supports a rejection of a claimant's
credibility); *Chaudhry v. Astrue*, 885 F.3d 661, 672 (9th Cir. 2012). *See also* 20 C.F.R. § 416.929
(objective medical evidence can be used in determining credibility; inconsistencies in evidence
will support a rejection of credibility); SSR 96-7p (objective medical evidence is a useful
indicator to assist in making a reasonable conclusion about credibility and the ability to function).

Second, the ALJ notes inconsistencies in Plaintiff's own reports. Plaintiff admitted to
receiving unemployment benefits until December 2012, which required Plaintiff to certify he was
ready and able to work. AR 24, 26, 50, 61. An ALJ may rely on ordinary techniques of credibility
evaluation such as prior inconsistent statements, and other testimony by the claimant that appears
less than candid. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). *See Smolen*, 80 F. 3d
at 1284 (An ALJ may consider a claimant's inconsistent statements). Thus, this is a valid reason
to reject Plaintiff's testimony.

Third, the ALJ references Plaintiff's prior work history as inconsistent with his pain
allegations. Plaintiff worked part time as a steel fitter through January 2011, over a year after the
alleged onset date, at levels close to substantial gainful activity. AR 38, 235, 192. *See Burton v.
Massanari*, 268 F.3d 824, 828 (9th Cir.2001) (as part of credibility assessment, the ALJ
considered claimant's work history and his admission that he left his job for reasons other than his
alleged impairment); *Bray v. Commissioner of Social Security Admin.,* 554 F.3d 1219, 1227 (9th
Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh inconsistencies between
the claimant's testimony and his or her conduct, daily activities, … among other factors.").

Finally, the ALJ relies on Plaintiff's lack of consistent treatment as a basis for finding him less than credible. AR 24. Plaintiff argues this was improper because he was unable to afford to go to the doctor or obtain medication. AR 42, 49, 257-58. An ALJ is permitted to consider lack of medical treatment in assessing credibility. *Burch*, 400 F.3d at 681. But, "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Orn v. Astrue* (9th Cir. 2007) 495 F.3d 625, 638 (citing *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995)). The Court has reviewed the record and notes there is ambiguity in Plaintiff's allegations of inability to afford treatment. AR 283, 285, 288. However, the Court need not determine whether rejecting Plaintiff's credibility based on conservative treatment was proper because the ALJ provided other valid bases for his credibility determination. *See eg., Batson v. Commissioner of Social Security*, 359 F.3d 1190, 1197 (9th Cir. 2004) (upholding ALJ's credibility determination even though one reason may have been in error).

Here, the ALJ provided clear and convincing reasons outlined above that are supported by substantial evidence to conclude Plaintiff's subjective symptom testimony was not credible. The ALJ clearly identified what testimony he found not credible and what evidence undermined Plaintiff's complaints. *Brown-Hunter*, 806 F. 3d at 493; *Lester*, 81 F.3d at 834. It is not the role of the Court to re-determine Plaintiff's credibility de novo. If the ALJ's finding is supported by substantial evidence, the Court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959. Although evidence supporting an ALJ's conclusions might also permit an interpretation more favorable to the claimant, if the ALJ's interpretation of evidence was rational, as it was here, the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Burch*, 400 F.3d at 680-81. Accordingly, the ALJ's credibility determination was proper.

**C. The ALJ Properly Determined Plaintiff's RFC**

Plaintiff argues that the ALJ's RFC determination failed to account for Plaintiff's acute and chronic sinusitis. Specifically, Plaintiff contends that because medical evidence of this medically determinable condition was presented, the ALJ had a duty to consider it, in combination with his other impairments, in the determination of his RFC. (Doc. 15, pg. 8, Doc.

17

17, Pgs. 4-5).

Defendant contends that Plaintiff did not allege disability on the basis of sinusitis or purport any impact it had on his facial pain. Defendant further argues that the ALJ's finding of trigeminal neuralgia as a severe impairment, and his consideration of Plaintiff's alleged left facial pain in his RFC assessment sufficiently addressed this issue. (Doc. 16, pgs. 11-12). Finally, Defendant points out that Plaintiff was represented by counsel who never raised this issue during the administrative hearing.

### 1. *Legal Standards for a RFC Determination*

In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p. However, if Plaintiff makes "no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." SSR 96-8p.

There is no dispute that Plaintiff did not raise his sinusitis during the administrative proceedings. Plaintiff contends the ALJ erred by failing to address his chronic sinusitis regardless of whether he raised the issue because the diagnosis was in the medical record. AR 261. The Ninth Circuit has held that "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel*, 172 F.3d at 1115, as amended (June 22, 1999). *See Marathon Oil Co. v. United States*, 807 F.2d 759, 767 (9th Cir. 1986) (stating that, "[a]s a general rule, we will not consider issues not presented before an administrative proceeding at the appropriate time"); *see also Mills v. Apfel*, 244 F.3d 1, 8 (1st Cir. 2001) (finding waiver due to failure to raise issue at hearing before ALJ, as opposed to the Appeals Council).[7]

---

[7]In *Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000), the Supreme Court held that a Social Security claimant's failure to present an issue to the Appeals Council does not waive judicial review of that issue but specifically deferred ruling on whether a claimant must exhaust issues before the ALJ prior to seeking judicial review. *See id*. at 107, 112. The First Circuit explained that "[t]he impact of a no-waiver approach at the Appeals Council level is relatively mild; at the ALJ level it could cause havoc, severely undermining the

## 2. *The ALJ's Findings*

During the January 2013 hearing, the ALJ asked Plaintiff what he was unable to do after his alleged disability date. Plaintiff answered the pain limited his ability to lift and carry heavy steel. AR 39. The ALJ and Plaintiff then discussed Plaintiff's treatment and medication history. AR 40. The ALJ questioned Plaintiff about his daily activities. Plaintiff reported being able to shower and bathe himself, prepare simple meals, do the laundry, go shopping, and do some housework. AR 40-41. Plaintiff then discussed pain and numbness in his feet, and the pain and limitations in his upper extremities. AR 41-42, 42-43. Plaintiff's counsel then asked the following questions regarding his facial pain and Plaintiff gave the following responses:

> Q: Now, in terms of your head, what part of your head do you have the pain?
>
> A: My whole left side, my eye and my head all down the back of my neck.
>
> Q: How often do you have that?
>
> A: Every day.
>
> Q: Does it affect your ability to function?
>
> A: I have trouble keeping a thought or thinking.
>
> Q: Do you mean concentration?
>
> A: Yeah.

AR 44-45.

> Q: The pain in your face, you said it's on your left side?
>
> A: Yes.
>
> Q: And does it move or radiate into any other part of your body?
>
> A: No, it's in my head.
>
> Q: Is it triggered by anything? Or strike that. Does it ever go away, the pain in your face?

---

administrative process." *Mills*, 244 F.3d at 8.

A: No, no.

Q: Is there anything that –

A: It gets worse.

Q: How does it get worse?

A: Like the worst toothache you ever had. I mean it just – I stop everything and I just sit there and just rock and it just hurts.

Q: What causes it to get worse?

A: I don't know, I –

Q: You're not sure?

A: No.

Q: If you –

A: When I would wear my teeth and they would push up on my gums, it makes my eye hurt and then my eye will water.

Q: How do you think it started, the problem with your face?

A: When I got my teeth pulled, I think.

AR 48-49. Plaintiff's counsel did not raise the issue of his sinusitis during the hearing. Left facial pain in general was the focus of the testimony elicited during the hearing.

### 3. Analysis

While the ALJ did not expressly mention Plaintiff's sinusitis, it is clear from the ALJ's consideration of all of the medical evidence in the record and all of Plaintiff's symptoms that the ALJ considered the impact of Plaintiff's facial pain on his RFC. The ALJ rendered his RFC determination "after careful consideration of the entire record," which included medical evidence of Plaintiff's sinusitis, and he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."

The medical record as a whole does not clearly reflect that Plaintiff suffers from limitations caused specifically by sinusitis. While there is a diagnosis of and limited references to acute and chronic sinusitis, there are no medical records reflecting complaints of or treatment for

sinusitis. AR 261, 270, 306. Rather, the record contains multiple references to left facial pain, which both Dr. Wagner and Plaintiff's treating physician, Dr. Suri, note is suggestive of left trigeminal neuralgia. AR 359, 284, 287. The ALJ identified trigeminal neuralgia to be among Plaintiff's severe impairments AR 21. It is apparent from the lack of mention in the treating records that Plaintiff's sinusitis did not affect his ability to function.

Further, if Plaintiff was alleging disability due to his chronic sinusitis, he had an obligation to raise the issue during the administrative proceedings to provide the Commissioner with the opportunity to consider and address the issue. "Counsel are not supposed to be potted plants at administrative hearings. They have an obligation to take an active role and to raise issues that may impact the ALJ's decision while the hearing is proceeding so that they can be addressed." *Solorzano v. Astrue*, No. ED CV 11-369-PJW, 2012 WL 84527, at *6 (C.D. Cal. Jan. 10, 2012). *See Harshaw v. Colvin*, 616 F. App'x 316 (9th Cir. 2015)[8] (existence of some evidence in the medical records not sufficient to have put the ALJ on notice); *Meanel*, 172 F.3d at 1115 (claimants represented by counsel must raise all issues and evidence at administrative hearings to preserve them on appeal).

Here, Plaintiff did not provide any notice to the Commissioner that he was alleging he was limited in his ability to work due to acute and chronic sinusitis, only that he was experiencing facial pain, which the ALJ addressed in his decision by recognizing the diagnosis of and possible functional limitations posed by trigeminal neuralgia. Based on the record, the ALJ adequately considered Plaintiff's sinusitis in his RFC determination. Moreover, the ALJ did not err by failing to specifically address Plaintiff's acute and chronic sinusitis as Plaintiff did not raise the issue during the administrative proceedings.

## VI. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social

---

[8] Unpublished dispositions and orders of the Ninth Circuit issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1. 9th Cir. R. 36-3(b).

Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff, Charles Joseph Haydostian.

IT IS SO ORDERED.

Dated:   **July 1, 2016**                        /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE

22